**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
AT ST. LOUIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cr-00423 |
| | ) |
| OLUMIDE AKINRINMADE, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT OLUMIDE AKINRINMADE'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD DEPARTURE, AND MOTION FOR VARIANCE**

Olumide "Olu" Akinrinmade is a 38-year-old Nigerian national who was foolishly drawn in by Rotimi Oladimeji, a friend and fellow countryman, into a simple scheme to fraudulently deposit checks in a nearby bank. Olu was handed two checks and a fake passport, which he dutifully took to the local bank for deposit. In return he was given $200. For this, the Government contends that he should be sentenced for a laundry list of crimes and misconduct by the man who enticed him with a quick buck. This "sophisticated" scheme to show up at a bank and deposit two checks with a fake I.D., according to the Government, made Olu responsible for more than $1,000,000 of damages to a woman Olu has never met, never heard of, and could not pick out of a lineup. The purpose of this filing is to convince this Court that such a contention is baseless and without evidentiary merit. Friedrich Schiller wrote: "The blame diminishes as the guilt increases." The Government has apparently made this concept the heart of their case, as they plan to present Oladimeji, the plot's mastermind, as a witness against a minor player.

Mr. Akinrinmade has asserted that the Total Offense Level in this case is 13. The Government has made three separate indications of what its position on the Total Offense Level should be: 21, 23, and 25 based on the Presentence Investigation Report (henceforth "PSR") and the negotiated plea agreement. (*See* PSR ¶ 41, 75). Additionally, immediate deportation is an inevitability for Mr. Akinrinmade, and permanent exile from the United States is sufficient to satisfy the factors set forth in 18 U.S.C. § 3553(a) and not greater than necessary. Accordingly, Mr. Akinrinmade respectfully requests that the Court sentence him to a period of supervised release, in an amount of years the Court finds appropriate.

**I. Total Offense Level**

    **A. Adjustments By Agreement of the Parties**

The parties have agreed to several Guidelines calculations. The Base Offense Level is 7 (PSR ¶ 31). The parties further agree that the Total Offense Level should be enhanced by two levels as a result of the production of fraudulent documents in connection with the offense. (PSR ¶¶ 34,76). Finally, the parties have agreed that Mr. Akinrinmade is entitled to a downward adjustment of two levels for the acceptance of responsibility. (PSR ¶ 40). All other factors are disputed.

    **B. Base Principles of Conspiracy Liability**

U.S.S.G. § 1B1.3 requires the consideration of several factors in order to establish what level of criminal responsibility exists for co-conspirators. A co-conspirator is liable for all acts that are: 1) within the scope of the jointly undertaken criminal activity; 2) in furtherance of that criminal activity; *and* 3) reasonably foreseeable in connection with that criminal activity. These acts and omissions must have occurred during the

2

commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. This includes all resulting harm from those acts and omissions.

### C. Enhancement Under U.S.S.G. 2B1.1(b)(1)

#### 1. Calculation of Loss

U.S.S.G. 2B1.1(b)(1) is the relevant guideline for the purposes of determining the enhancement applied for the amount of financial loss. The guideline provides for a range of options based on the "amount of loss." This term is defined in the application notes at the end of the section:

(A) **General Rule** […] Loss is the greater of actual and intended loss.

> **(i)** **Actual Loss.—"Actual loss"** means the reasonably foreseeable pecuniary harm that resulted from the offense.
>
> **(ii)** **Intended Loss.—"Intended loss"** (I) means the pecuniary harm that the defendant purposely sought to inflict

U.S.S.G. § 2B1.1(b)(2), cmt. n.3(A). "To calculate the sentencing range for a fraud case, we need to determine the amount of loss caused by the fraud." *United States v. Staples*, 410 F.3d 484, 490 (8th Cir. 2005). As the loss calculation applies the greater out of actual and intended losses, both must be calculated. "Intended loss is the loss the defendant intended to cause to the victim." *Id.* (*Internal citations, quotations omitted*). The Defense expects that the evidence at sentencing relating to intended loss will indicate that the intended loss amounted to $46,500. Mr. Akinrinmade intended no additional loss to the victim. In addition, the actions undertaken by Oladimeji were not sufficient to meet the requirements for liability of U.S.S.G. § 1B1.3. Most notably, the

3

romance scheme was outside the scope of the jointly undertaken criminal activity to deposit checks with a false identification document.

The Government has maintained its position that the relevant enhancement is substantially in excess of what would apply to a loss of $46,500, though its calculations of the loss have varied over time. (*See* Indictment, PSR ¶¶ 20, 27, 32, 75). The Defense presumes that the Government intends to argue that the actual loss is greater than the intended loss. However, the plain language of the guideline requires that actual loss be harm that "resulted from the offense." The Defense expects that evidence at sentencing will establish the offense committed by Mr. Akinrinmade to be a conspiracy to deposit checks using a fraudulent identity document, not a conspiracy to defraud R.W. The actual and intended losses are equal at $46,500, and as a result, an enhancement of six levels to the total offense level is appropriate.

### 2. Separate Conspiracies

Under the caselaw of the 8th Circuit, there are several tests to determine whether there was one or more conspiracies involved in a set of criminal actions. "In determining whether multiple conspiracies rather than a single one have been proved, '[t]he general test is whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy.'" *U.S. v. Massa*, 740 F.2d 629, 636 (8th Cir. 1984) (*Internal citations omitted*). In the instant case, there was no such agreement. The conspiracy that Mr. Akinrinmade pled guilty to, and the conspiracy that he was in fact involved in, went no further than the deposit of checks in a bank account established via a fraudulent identification document. There was a separate conspiracy involving Oladimeji and unknown international individuals or organizations to

4

fraudulently deprive the victim of monies and transfer them abroad, but Mr. Akinrinmade does not believe any credible testimony or evidence will be produced which ties him to that conspiracy. *See also U.S. v. Clay*, 579 F.3d 919, 931 (8th Cir. 2009). The Government's assertion that Mr. Akinrinmade's conduct in taking checks to a bank gives rise to his liability for a long series of tenuously-related actions undertaken by Oladimeji fails to satisfy the simple limiting principle explained in *Massa* and other cases.

An additional test used by the 8th Circuit in analysis of conspiracy cases has been a totality of the circumstances test:

> [I]t involves consideration of such factors as (1) the time period involved; (2) the individuals charged as coconspirators; (3) the offenses charged; (4) the overt acts charged or any other description of the offenses charged which indicate the nature and scope of the activity sought to be punished; and (5) the places where the alleged conspiratorial acts took place.

*U.S. v. Abboud*, 273 F.3d 763 (8th Cir. 2001) (*Internal citations omitted).* "These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." *U.S. v. Thomas*, 759 F.2d 659, 662 (8th Cir. 1985)[1]. Under this test, Mr. Akinrinmade's conduct and Oladimeji's conduct can be differentiated as two separate conspiracies. The Defense concedes that the same two individuals in the check depositing scheme are the same two individuals who are charged with the financial deprivations to the victim, but Mr. Akinrinmade's conspiratorial involvement is otherwise separable under this test. The time period of Mr. Akinrinmade's involvement was limited: he deposited a limited number of checks into the bank account Oladimeji controlled in

---

[1] These cases are discussing the application of double jeopardy to multiple indictments for allegedly separate conspiracies. Though in a different context, the analysis remains instructive for the consideration of culpability for the actions of others and the identification of multiple separate conspiracies.

5

November of 2019. (*See* PSR ¶ 21). Oladimeji and his unknown cohorts' involvement stretched from May of 2019 through February of 2020 – so, while the time period overlaps, Olu's participation in the scheme took place during a small fraction of the overall scheme. Oladimeji was charged alone with an additional five counts of wire fraud and aggravated identity theft, which, under the Government's presumed theory of culpability, could also have applied to Mr. Akinrinmade, but the indictment made no mention of Mr. Akinrinmade under Counts 6-10. (*See* Indictment, D.E.#30). No evidence exists in discovery that the Defense has found to suggest that Mr. Akinrinmade engaged in any overt acts other than the depositing of checks, and the Defense does not expect credible evidence to be elicited at sentencing that will suggest otherwise. Finally, the only place that Mr. Akinrinmade was involved in the scheme was within the United States, in Texas, where he spoke with Oladimeji and traveled to the bank to deposit checks. He was never involved in any activities outside of the country, or even outside the state of Texas, relevant to Oladimeji and his cohorts' activity. If the Court were to accept that Mr. Akinrinmade is responsible for Mr. Oladimeji's actions in furtherance of his separate conspiracy, there is no reason to stop there. If and when the Government continues its investigation into the ultimate destination of the monies, Mr. Akinrinmade should be prosecuted and convicted for the misdeeds of whomever took control of the money. This line of reasoning plainly follows from the Government's position and equally fails to meet the basic requirements of co-conspirator liability listed above. For those reasons, the Court should assess his culpability relative only to the conspiracy to deposit checks, not Oladimeji's separate conspiracy to scam R.W. out of her property, and therefore add six levels to the Total Offense Level.

### D. Enhancement Under U.S.S.G. § 2B1.1(b)(10)

#### 1. Sophisticated Means, § 2B1.1(b)(10)(c)

The Government asserts that the offense involved sophisticated means. This is an enhancement under U.S.S.G. § 2B1.1(b)(10)(c) that would apply an additional two levels to the Total Offense Level. This guideline enhancement reads, in relevant part: "(C) the offense otherwise involved sophisticated means ***and the defendant intentionally engaged in or caused the conduct constituting sophisticated means***," *Id., (emphasis added).* Further clarification can be found in the comments:

> **(B) Sophisticated Means Enhancement under Subsection (b)(10)(C).**—For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1(b)(10), cmt. n.9(B). The Defense expects that evidence adduced at sentencing will indicate that if any sophisticated means were used in the commission of the check depositing scheme, those means were engaged in or caused by Oladimeji. The Defense presumes that the Government's position on this offense is that Oladimeji's use of numerous false identities and offshore bank accounts is sufficient to apply this enhancement. The Defense asserts that there is a causative requirement apparent in the enhancement, and that Mr. Akinrinmade's conduct did not cause Oladimeji's conduct, nor did he engage in anything particularly sophisticated himself. The Government may argue that his use of a fictitious identity was sufficient to apply the enhancement, but the Defense would point to the examples used in comment 9(B),

7

which describe a Defendant who moves money or business operations across multiple jurisdictions. Mr. Akinrinmade did no such thing. He used a fake passport, opened a bank account in a fake name, and deposited two checks. It was not particularly "sophisticated," and to the extent that Oladimeji's conduct may have been sophisticated, Mr. Akinrinmade was not involved in that multinational conspiracy. Ultimately, this crime was no more sophisticated than that of a college student who takes a fake I.D. and presents it to get a beer at his local Applebee's. There is not a whisper of additional sophistication above that fact pattern. The contention that Oladimeji's decision to move the monies outside of the United States, in connection with his decision to use false identities in his deception of R.W. is sufficient to establish this enhancement is incorrect. Those actions were outside the scope of the conspiracy to present a fake I.D. and deposit checks that Mr. Akinrinmade was a part of, and he is not liable for those actions under U.S.S.G. § 1B1.3.

### 2. Outside the United States, § 2B1.1(b)(10)(b)

The Government asserts an enhancement under U.S.S.G. **§** 2B1.1(b)(10)(B) is appropriate: "a substantial part of a fraudulent scheme was committed from outside the United States[.]" This enhancement would apply an additional 2 levels to the Total Offense Level, and only one of either §§ 2B1.1(b)(10)(B) or 2B1.1(b)(10)(C) need be found to apply the two-level enhancement. As with § 2B1.1(b)(10)(C), the "outside the United States" enhancement is inappropriate in the instant case. The only activity that involved conduct outside the United States asserted by the Government as relevant to this case appears to be bank transfers made to offshore bank accounts. These actions were taken solely by Oladimeji and had no connection to the check conspiracy. The 11th

8

Circuit has analyzed § 2B1.1(b)(10)(B) in the context of a conspiracy, and Mr. Akinrinmade urges this court to apply their reasoning:

> Finally, we do not believe that the defendant must personally take action from outside of the United States in order for the enhancement to apply. First, if we were to limit a defendant's culpability as asserted by *Singh*, we would contradict the well-established principle that an act may be imputed from one co-conspirator to another. *See United States v. Gallo*, 195 F.3d 1278, 1281 (11th Cir. 1999) (holding that "[t]he Guideline instructs that an act may be imputed from one co-conspirator to another provided the conduct was (1) reasonably foreseeable, and (2) in furtherance of the jointly undertaken criminal activity ....") (internal quotation omitted); *see also United States v. Rayborn*, 957 F.2d 841, 844 (11th Cir. 1992) (holding that "all losses caused by fraud or deceit which are governed by ... § 2F1.1 may be imputed to a defendant who was a member of the conspiracy which caused those losses.").

*U.S. v. Singh*, 291 F.3d 756, 761-2 (11th Cir. 2002). The 11th Circuit, in the *Singh* case, applied general rules about conspiracy liability to this enhancement – they required foreseeability and furtherance of jointly undertaken criminal activity. Oladimeji's money transfers may have been reasonably foreseeable – both men are foreign nationals, and Mr. Akinrinmade himself made frequent international transfers to family and business relations in Nigeria – but were not in furtherance of the check depositing conspiracy. They were in service of Oladimeji's conspiracy with other unknown persons. The contention that Oladimeji's decision to move the monies outside of the United States, in connection with his decision to use false identities in his deception of R.W. is sufficient to establish this enhancement is incorrect. Those actions were outside the scope of the conspiracy to present a fake I.D. and deposit checks that Mr. Akinrinmade was a part of, and he is not liable for those actions under U.S.S.G. § 1B1.3. For those reasons, this Court should find that the enhancement found in § 2B1.1(b)(10)(B) does not apply.

### E. Minor or Minimal Role

Mr. Akinrinmade was a minor or minimal participant in the criminal activity, as described more fully in previous sections of this filing. As a result, he should qualify for a reduction of 2 or 4 levels in the Total Offense Level under U.S.S.G. 3B1.2(b).

## II. Factors Warranting Departure

The United States Sentencing Guidelines (henceforth "U.S.S.G.") provide limited guidance and broad discretion for the factors that may warrant departure:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1 Pt. A(4)(b). Other than a set of factors that are primarily immutable characteristics like race, anything is appropriate for consideration. Mr. Akinrinmade's behavior lies outside of the "heartland" of anticipated conduct that falls under the general aegis of the mail fraud guidelines. This issue primarily relates to loss, its calculation, and the imputation of responsibility across conspiracies. As these issues were addressed in the preceding section, the point will not be belabored here.

If this Court was convinced by the Government's arguments as to the appropriate computation of loss, then it should be emphasized that Mr. Akinrinmade's criminal actions accounted for less than 5% of the total losses incurred by the victim. Further, Mr. Akinrinmade never had contact with the victim, was unaware of the extent of Oladimeji's predations, received minimal pecuniary gain, and was not involved in the conspiracy in any decision-making capacity. His conduct was limited to the presentation of a falsified passport and the deposit of checks into an account from which he never

withdrew any money. This de minimis involvement in the wider scheme goes beyond the Guidelines' contemplation of the role of a 'minor participant.'

### III. 18 U.S.C. § 3553(a) Factors

18 U.S.C. § 3553 (a) states in relevant part:

**(a)FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

### A. The History and Characteristics of the Defendant

Mr. Akinrinmade is thirty-eight years of age and is before this Court for his first felony offense. He has no prior criminal convictions and has a criminal history score of zero. (*See* PSR ¶ 45). Olu grew up in Kwara, Nigeria, where he was raised primarily by his father's first wife, though he was born to another of his father's four wives. (*See* PSR

11

¶ 48). He was without a consistent paternal presence in his youth, as his father frequently traveled between his different wives. *Id.* He lived a comfortable life in Nigeria prior to his travel to the United States, where he has resided since 2016. He lived somewhat itinerantly since his arrival, but primarily resided in several places within the state of Texas. He was married while in Nigeria, but has since divorced and remarried. He has three children by his ex-wife. They presently reside with their mother in Louisiana. His current wife has not yet decided whether she will follow him to Nigeria at the conclusion of this case. As a result, this conviction will separate him from his children, possibly permanently, and may lead to the dissolution of his marriage.

### B. The Nature and Circumstances of the Offense

Pursuant to a plea agreement, on April 14, 2023, Mr. Akinrinmade pled guilty to one count of Conspiracy to Committ Mail Fraud under 18 U.S.C. § 1349. He has been deemed the least-culpable among those charged by this indictment. (PSR ¶ 25). Regarding the actual offense conduct, the only allegation in the indictment against Mr. Akinrinmade directly concerning the commission of the romance scam is an allegation in ¶ 5 that he assisted Oladimeji in the creation of a social media account – an act that, given Oladimeji's clear competence in the use of computers, he would have needed no assistance to complete – which has no evidentiary foundation known to Mr. Akinrinmade nor is evidenced in discovery materials examined by the Defense. (*See* Indictment, ¶ 5-10). The indictment further alleges that packages were shipped to Mr. Akinrinmade's home address in or after November of 2021 – an address that he had quit earlier that year. *Id.* At ¶ 11. Finally, the victim is alleged to have "Believe[ed] the assertions" of Mr. Akinrinmade and Oladimeji, despite Mr. Akinrinmade not being

12

alleged to have made contact with her at any other point in the indictment, and such assertions not being present in the PSR. Mr. Akinrinmade never had any contact with the victim, and no evidence has been produced to suggest otherwise. Mr. Akinrinmade's conduct was limited to the taking and depositing of checks into Oladimeji's bank account using false identification.

The remainder of the indictment is almost wholly absent of Mr. Akinrinmade's name in a non-conclusory context (and ¶¶ 18 and 20(e), which accurately described Mr. Akinrinmade's actions). Mr. Akinrinmade's participation in the scheme was minimal, and entirely in a secondary role. He was a soldier in the service of the mastermind, Oladimeji.

### C. Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

Fraud of any kind is a serious and important crime. It is appropriate to assess a serious punishment. The most important outcome of this proceeding for Mr. Akinrinmade will not be the Court's decision on Total Offense Level, incarceration, or supervised release. The most important outcome of this proceeding for him was already decided: exile from the United States, from his family, from his children, and from the society and relationships which he has become a part of over the last seven years of residency. That outcome is a collateral consequence of the proceeding, but as punishment it is severe, and this outcome clearly promotes respect for the law amongst those present in the country illegally, as those populations have meaningfully lower crime rates than citizens and those in the country legally. Michael T. Light, et. al,

13

*Comparing crime rates between undocumented immigrants, legal immigrants, and native-born US citizens in Texas*, PNAS Vol. 117, Iss. 51 (2020)[2].

### D. To Afford Adequate Deterrence to Criminal Conduct and To Protect the Public from Further Crimes of the Defendant

Mr. Akinrinmade has never been imprisoned before and he has no past criminal convictions. In *U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006), the Court affirmed a lower sentence, justified in part by a finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with the goal of "adequate deterrence" in Section 3553(a)(2)(B). First-time offenders – particularly first-time offenders who commit their first offense while older than their twenties – have the lowest rate of recidivism.[3] While this is considered by the Guidelines, the Defense asserts that this consideration is insufficient to address the meaningful difference between a person with zero prior criminal history and someone whose prior history places him into category I. The Sentencing Commission itself has acknowledged this important distinction – modifications to the Guidelines are set to go into effect November of this year, and those modifications would encourage this Court to consider whether an additional 2 levels should be deducted from the Total Offense Level for Olu.[4] Not obtaining a deduction as a result of the date of his sentencing is arbitrary and unjust,

---

[2] Retrieved 7/11/2023, https://www.ojp.gov/library/publications/comparing-crime-rates-between-undocumented-immigrants-legal-immigrants-and

[3] *See* Report of U.S. Sentencing Commission "*Recidivism and the 'First Offender'*" (May 2004), retrieved 7/11/2023, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf, *see also* Recidivism Among Federal Offenders: A Comprehensive Overview (March 2016), retriever 7/11/2023, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

[4] *See* 2023 Guidelines Amendments, retrieved 7/11/2023, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf

and the Defense encourages this Court to consider these upcoming revisions of the Guidelines when it applies its ultimate sentence.

## Conclusion

Ultimately, Mr. Akinrinmade had a bit part in this conspiracy. He performed and was aware of an extremely limited part of the criminal activity. For that reason, and the others previously stated, the defense is requesting that the Court sentence Olumide Akinrinmade to supervised release, of an amount of time the Court finds appropriate.

Respectfully submitted,

/s/ Neilson Lea
W. Scott Rose, #61587
Neilson Lea, #70537
ROSE LEGAL SERVICES, LLC
3870 South Lindbergh Blvd, Suite 130
Saint Louis, MO  63127
(314) 462-0200
(314) 786-0524 (fax)
wsrose@roselegalservices.com
nlea@roselegalservices.com
*Attorneys for Olumide Akinrinmade*

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 11th day of July 2023, a true and correct copy of the foregoing was served through the Court's electronic filing system or via first-class mail to each of the following:

Ms. Tracy L. Berry  
Office of the United States Attorney  
111 South 10th Street, 20th Floor  
St. Louis, MO  63102  
*Attorney for the United States of America*

                                              /s/ Neilson Lea  
                                              Neilson Lea